**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SUNIL SHANKRALAR PATEL,

      Petitioner,

  v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.,

      Respondents.

Case No. 2:26-cv-05888-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

**I.**

**INTRODUCTION**

On June 1, 2026, Petitioner Sunil Shankralar Patel (A# 200-158-254) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2-4.) Also on June 1, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order and/or Preliminary Injunction (the "*Ex Parte* Application"). (Dkt. 2.) Pursuant to General Order 26-05, which applies to this case, Respondents' Answer was due by June 8,

2026.  (Dkt. 7.)  The Court directed that Respondents provide any response to Petitioner's *Ex Parte* Application when they file their Answer, or Respondents could simply state that their Answer addresses both the Petition and the *Ex Parte* Application.  (Dkt. 7.)  On June 8, 2026, Respondents U.S. Immigration and Customs Enforcement ("ICE"), Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Lyons, Acting Director of ICE, Thomas Giles, Los Angeles Field Office Director for ICE, James Pilkington, Assistant Los Angeles Field Office Director for ICE, and GEO Group Inc., Warden of the Adelanto Detention Facility (collectively, "Respondents") filed a Response to the Petition (the "Answer").  (Dkt. 10.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 4, 8.)  **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  (Dkt. 1.)  Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so.  (Dkt. 10.)  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a 44-year-old citizen and national of India who has lived in the United States for approximately 28 years.  (Dkt. 1 at 2.)  Petitioner's 19-year-old son is a U.S. citizen.  (Id.)  Petitioner's 16-year-old daughter is a U.S. citizen.  (Id.)  Petitioner's older sister is a U.S. citizen.  (Id.)  Petitioner has substantial family,

employment, and community ties in Southern California.  (Id.)

DHS first arrested Petitioner into immigration custody in March of 2012. (Id.)  DHS then released Petitioner on a $2,500 bond in April of 2012.  (Id.)  For approximately fourteen years, Petitioner remained at liberty.  (Id.)  DHS's own records identify no new criminal conviction, no failure to appear, no violation of bond, and no changed circumstance justifying a sudden deprivation of liberty.  (Id.) Petitioner's only conviction is a misdemeanor conviction from 2012.  (Id.)  DHS' 2026 records identify no criminal history since.  (Id.)

Petitioner's removal proceedings were administratively closed in 2016 due to a pending immigration application.  (Id.)  In July 2025, DHS sought to re-calendar those proceedings.  (Id. at 2-3.)  However, on March 13, 2026, ICE officers arrested Petitioner during a targeted operation at the Rancho Cucamonga Superior Court parking lot and transported him to the Adelanto Detention Center.  (Id. at 3.)  Once in custody, Petitioner requested custody review.  (Id.)  On May 20, 2026, Petitioner had a bond hearing before an Immigration Judge, but the Immigration Judge concluded that the court lacked authority to conduct a custody determination because it considered Petitioner to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), rather than discretionary detention 8 U.S.C. § 1226(a).  (Id.)

Petitioner suffers from Bell's Palsy.  (Id.)  Before detention, he was receiving ongoing treatment for facial nerve paralysis affecting his eye closure, tearing, and vision.  (Id.)  Since detention, Petitioner's care has been interrupted.  (Id.)  Petitioner is not receiving prescribed eye treatment with the frequency required, and he is not receiving proper lid taping to protect his eye.  (Id. at 3-4.)  Petitioner's detention is also causing severe harm to his minor daughter, who has experienced depression, anxiety, poor sleep, panic symptoms, poor appetite, impaired concentration, and loss of interest in normal, activities since ICE took her father into custody.  (Id. at 4.)

\\

3

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his re-detention and continued detention without constitutionally adequate process violates his procedural due process rights.  (Dkt. 1 at 19-23.)  Petitioner's second claim for relief (Count II) is that his continued detention violates his substantive due process rights because he is not a flight risk or a danger to the community and his medical condition is not being adequately treated in custody.  (Id. at 23-25.)  Petitioner's third claim for relief (Count III) is that his detention violates the Immigration and Nationality Act ("INA") because he is not to mandatory detention under 8 U.S.C. § 1225(b)(2), but instead is subject discretionary detention 8 U.S.C. § 1226(a).  (Id. at 25-26.)  Petitioner's fourth claim for relief (Count IV) is that to the extent Respondents invoke any statute or regulation to foreclose federal court review of the instant Petition, that would violate the Suspension Clause of the U.S. Constitution.  (Id. at 26-27.)

Petitioner seeks immediate release from custody and under his prior conditions of release.  (Id. at 28.)  In the alternative, Petitioner seeks a prompt bond hearing before a neutral adjudicator at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is necessary because he presents a danger or flight risk, and the adjudicator considers alternatives to detention, and Petitioner's ability to pay bond.  (Id. at 28-29.)  Petitioner further seeks an order enjoining Respondents from transferring Petitioner outside of this judicial district during the pendency of this action.  (Id. at 29.)  Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id.)

\\

\\

# IV.

# LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner has lived in the United States for approximately 28 years and has substantial family, employment, and community ties

in Southern California.  (Dkt. 1 at 2.)  It is further undisputed that Petitioner was first arrested by immigration authorities back in March of 2012 and was subsequently released on a $2,500 bond in April of 2012.[1]  (Id.)  Thus, the Court concludes that once Petitioner was released from custody on bond, he acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the past fourteen years he spent out of custody building a life for himself in the United States.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, it is undisputed that Petitioner developed substantial family, employment, and community ties in Southern California, including his two U.S. citizen children and

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

his U.S. citizen sister.  (Dkt. 1 at 2.)  Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was arrested by ICE officers on March 13, 2026, without prior notice or a pre-deprivation hearing to revoke his bond.  (Dkt. 1 at 2-3.)  It is further undisputed that Petitioner has remained at liberty for the past 14 years since his release on bond and has no new criminal convictions, failures to appear, violations of bond, or changed circumstances to justify a sudden deprivation of liberty.  (Id.)  Thus, the Court concludes that Petitioner's re-detention by immigration authorities on March 13, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal

quotation marks omitted).  The last uncontested status here is Petitioner's release from custody on his prior conditions of release.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner received a post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights, particularly because the Immigration Judge concluded that the court lacked authority to conduct a custody redetermination.  (Dkt. 1 at 3.)  Similarly, the fact that Respondents are now offering a second bond hearing "with instructions that the Immigration Judge has jurisdiction to consider the request for custody redetermination," (Dkt. 10 at 2), also does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the]

[p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  Thus, the Court concludes only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor.  Under the second Matthews factor, the risk of erroneous deprivation is very high because an Immigration Judges has already wrongly determined that Petitioner is not entitled to a bond hearing.  (Dkt. 1 at 3.)  Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided.  See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

10

state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[3]

---

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case.  See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, Case No. EDCV 25-03442-KK-MBK, Dkt. 22 (C.D. Cal. June 3, 2026) (rejecting objections to permanent enjoining requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

The Court notes that Respondents concede that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  (Dkt. 10 at 2.)  On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class.  See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge."  Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).  On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal.  Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026).  Thus,

the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2). See Maldonado Bautista, 2025 WL 3678485, at *1. Indeed, the statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for release on bond, should he be detained in the future. Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). See id. However, Petitioner is also entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above.

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA. (Dkt. 1 at 29.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Sunil Shankralar Patel (A# 200-158-254) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's March 13, 2026 re-detention). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing.

13

The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED:   June 10, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

14